HOWARD. COOK, PLAINTIFF-APPELLEE, v. CHARLES M. RICE AND JOSEPH S. HOLMAN, PARTNERS, TRADING AS MERLIN MOTOR CO., DEFENDANTS-APPELLANTS.

Submitted October 1, 1946—Decided February 21, 1947.

Before Justices PARKER, DONGES and EASTWOOD.

For the plaintiff-appellee, *Edward W. Eichmann.*

For the defendants-appellants, *Albert B. Melnik.*

The opinion of the court was delivered by

EASTWOOD, J. Defendants-appellants appeal from a judgment recovered by the plaintiff-appellee in the District Court of the City of Camden, entered on the verdict of a jury. The action is based on an alleged breach of warranty made upon the sale to plaintiff-appellee of a used 1941 Packard automobile by the defendants-appellants on May 29th, 1945. The jury returned a verdict against the defendants-appellants in the amount of $380.56, and costs. The present appeal is grounded on alleged error on the part of the trial court in (1) the admission, over objection, of certain testimony by plantiff-appellee's witnesses; (2) the refusal of the trial court to grant defendants-appellants' motion for a nonsuit; and (3) error in the charge of the trial judge.

Defendants-appellants are engaged in the business of buying and selling used automobiles. At the time of purchase of the automobile in question, plaintiff-appellee was given a

so-called "Dealer's Warranty." The warranty, that is the subject-matter of the present litigation, reads as follows:

"Dealer's Warranty

"The used car described below, including any equipment named in Appendix D of Maximum Price Regulation 540, is hereby warranted to be in good operating condition and to remain in such condition under normal use and service for a period of 30 days after delivery, or 1,000 miles, whichever may first occur.

"We, the undersigned, agree, if said car is delivered during the above period to our place of business, to make with reasonable promptness any repairs or replacements, which may be necessary to its good operating condition in accordance with normal use and service, at a cost to the purchaser named below of not more than 50% of the normal charge for such repairs and replacements. Our normal charge is not in excess of OPA ceilings.

"This warranty does not extend to tires, tubes, paint, glass, upholstery, or to any repairs or replacements made necessary by misuse, negligence or accident."

Plaintiff-appellee sought to establish a breach of the foregoing warranty by offering testimony of the witness, Anthony Panichella, an automobile mechanic, who examined the car on May 30th, 1945, and the witness, James J. McGuigan, an automobile mechanic employed by the Volmer repair shop, who examined the car on October 3d, 1945. Panichella testified that he made only a cursory examination of the car and that he found among other things, that the top of the car was ripped, the starter mechanism did not function properly, the motor was noisy, the top did not function properly, the tie rods were defective, and that the lights, radio, and heater were not in good working order. He testified that his examination was just a casual glance, and stated, "If I had went into it proper, we probably would have found a lot more wrong." The witness, McGuigan, testified that his examination of the automobile was made on October 3d, 1945, approximately five months after the date of sale. He testified that the automobile needed a new flywheel, carbon removed, valves

 

and carburetor cleaned, repairs to the fuel pump and starter, an overhauling and adjustment of the steering mechanism, and further, that repairs would have to be made to the exhaust, radiator, lighting system, overdrive, radio, rear axle, drive shaft, and universal. His testimony was in substance, that the car needed a complete overhauling. Witness, Henry S. Volmer, an operator of a Packard agency in Camden, testified that the automobile was examined on October 3d, 1945, at his place of business, and an estimate furnished as to the necessary work to put it in good condition. He further testified that the automobile in question had originally come from his salesroom, and had been sold to a man by the name of Garrigues, and had been serviced by his shop during the period of time that Mr. Garrigues was the owner. The witness, Volmer, concluded his testimony by estimating the amount of repairs necessary to place the car in good operating condition would amount to approximately $380.50.

Plaintiff-appellee testified that he purchased the car on May 29th, 1945, that it was warranted to be in good operating condition, but that it proved to be unsatisfactory. He further testified that he attempted to have an adjustment made with the representatives of defendants-appellants, but was unable to receive any satisfaction. He also testified that from May 29th, 1945, until October, 1945, he drove the car approximately 1,500 to 2,000 miles, and that his total expenditures for repairs amounted to $2.50 for adjusting the brakes.

Evidence was offered by the defendants-appellants tending to refute the testimony offered by the plaintiff-appellee. In substance, the witnesses on behalf of the defendants-appellants, testified that the automobile was in good operating condition when sold to the plaintiff-appellee. They also testified that several attempts were made to have the alleged defective condition of the car remedied, but that plaintiff-appellee failed to put in an appearance at the appointed times, so that no definite solution of the difficulties had been made prior to the institution of suit.

We have carefully examined the proceedings below and conclude therefrom that the trial court improperly admitted, over objection, the testimony of the witnesses, Volmer and

McGuigan, for the purpose of establishing the alleged defective condition of the automobile at the time of sale. These witnesses had no knowledge of the condition of the automobile at the time of purchase on May 29th, 1945. Their testimony was only competent as to its condition at the time of their examination on or about October 3d, 1945, a period of approximately five months from the date of sale. Unquestionably their testimony established the approximate cost of repairs as of October 3d, 1945, necessary to place the automobile in good working condition, but had no relevancy as to the condition of the automobile at the time of purchase. Their testimony was entirely too remote to have any legal competency on the question of the alleged breach of warranty and should not have been admitted. The testimony of the witness, Panichello, as to the condition of the automobile on May 30th, 1945, the day following the sale, is of little value. He, himself, testified that his examination was just a casual glance and stated, "If I had went into it proper, we probably would have found a lot more wrong." This being so, the testimony of the witnesses Volmer and McGuigan, being based on the testimony of the witness Panichella, was clearly incompetent.

The charge of the trial court as to the measure of damages for the alleged breach of warranty does not comply with the rule enunciated in *Perrine* v. *Serrell*, 30 *N. J. L.* 454; *Spence* v. *Hutchinson*, 102 *N. J. L.* 131; 130 *Atl. Rep.* 612, and *Iuliucci* v. *Rice*, 130 *N. J. L.* 271; 32 *Atl. Rep.* (2d) 459, holding that the proper measure of damages is the difference between the value of the article sold and the value of the article had it corresponded to the warranty. The Uniform Sale of Goods Law, *R. S.* 46:30–75 (7), has given statutory expression to the rule as follows:

"In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty."

The trial judge in his charge stated *inter alia:* "* * *

There has been some testimony in this case that the car was examined in October of 1945, at which time certain repairs were necessary. An offer or estimate was made by the persons examining the car at that time and they stated under oath that it would cost $380.50 to make the necessary repairs which they found were needed at that time. If you find that the condition of the automobile which existed in October was the condition which existed in May, when it was sold, then, of course, there was a breach of warranty and the plaintiff is entitled to a verdict. If, however, you find from the facts that the condition which prevailed in October did not exist in May, then, of course, you will find a verdict for the defendants. In other words, it is your duty to determine whether or not the defendants breached their warranty in that the car was not in a good operating condition at the time they sold it. Now, if it was not, as I said before, you will find a verdict for the plaintiff. If it was, you will find a verdict for the defendants." And continuing, "You must take into consideration all the evidence you have heard, the length of time he had the car, when he sold it, what he paid for it, what repairs were needed in October and, if you find those repairs were needed in May, when it was sold, then, of course, you figure out in this way what in your opinion is a fair verdict for the plaintiff, but I want to repeat if you find there was no breach of warranty, if you believe the testimony of the defendants, that the car was in good operating condition when it was sold, then your verdict must be one of no cause of action." We conclude that the quoted portions of the trial court's charge did not fairly comply with the established rule on the question of measure of damages for breach of warranty as enunciated in *Perrine* v. *Serrell, Spence* v. *Hutchinson, Iuliucci* v. *Rice,* and *R. S.* 46:30–75 (7), *supra.* The jury was thus left to speculate.

For the reasons set forth we are constrained to hold that the trial court fell into reversible error both on the question of the admission of the testimony objected to and its failure properly to charge the jury as to the measure of damages for the alleged breach of warranty.

The judgment below is set aside and a new trial directed.