Edward VOYTOVICH, Plaintiff-Appellee,

v.

BANGOR PUNTA OPERATIONS, INC., Defendant-Appellant.

No. 73-1724.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 8, 1974.

Decided April 3, 1974.

---

S. Stuart Eilers, Thompson, Hine & Flory, Cleveland, Ohio, for defendant-appellant.

David G. Davies, Arter & Hadden, Cleveland, Ohio, for plaintiff-appellee.

Before WEICK and LIVELY, Circuit Judges, and ROSENSTEIN,* Senior Judge, Customs Court.

PER CURIAM.

Bangor Punta Operations, Inc. [Bangor Punta] appeals from an order of the District Court to the effect that Edward Voytovich is entitled to rescission of his contract to purchase a boat and to recover the purchase price of $19,424.84, or in the alternative to recover damages for breach of warranty in the amount of $10,000. We vacate the order with respect to rescission, and affirm the judgment against Bangor Punta in the amount of $10,000, with interest and costs.

Bangor Punta is in the business of building boats. Voytovich is an amateur sailor who was attracted to a 33-foot Ulrichsen cruiser by reading a Bangor Punta brochure which stated in part that the boat was built for rugged cruising beyond the 12-mile limit, that the boat was of first-class seaworthiness, and that it had a unique response to "white water."

* The Honorable Samuel M. Rosenstein, Senior Judge, United States Customs Court, sitting by designation.

Voytovich purchased the boat from Bangor Punta's dealer, Zucker Marine, Inc. The boat was manufactured by Luhr's, Inc., a division of Bangor Punta has assumed the responsibility for Luhr's design and manufacture.

The District Court found that the words in the brochure were an express warranty, and that Voytovich relied on this statement when he contracted to purchase the boat through the marine broker, Zucker Marine, Inc.

Shortly after delivery the boat was severely damaged in a voyage on Lake Erie. Voytovich sued both Zucker and Bangor Punta, seeking either a rescission of the sale or damages. At the close of plaintiff's case the District Court dismissed the dealer Zucker. Voytovich did not appeal this dismissal. At the close of all the evidence the Court, sitting without a jury, found in favor of Voytovich, who was given the option of rescinding the sale and recovering the purchase price, or in the alternative recovering $10,000 in damages.

The District Court found as matters of fact that the seas were not excessively dangerous during the voyage and that Voytovich's seamanship was adequate. The Court also found:

13) The experts generally agreed that the damage they saw and described was caused by an inboard and outboard flexing of the hull in the mid-ships area, allowing the deck to pull loose from the hull and settle, the structures to deform and crack. The slapping and pounding and wave peculiarity allowed the hull to sag and hog on the crests and troughs of the seas.

.    .    .    .    .    .

15) The experts likewise agreed generally that there was inadequate transverse strength in the aft two-thirds of the hull at the sheer strakes, and that sound boat building practice requires support members for the deck and bridge in that area.

16) The damage was proximately caused by the excessive flexibility of the hull in responding to normal, foreseeable and expected conditions.

17) The reasonable cost of repairs was $9,487. Notwithstanding the repairs done, the "Rosalie Vee II" still has the inherent excessive flexibility, and is unsuited for Lake Erie operations or other rugged cruising.

Bangor Punta raised three points on appeal. First, it claimed that rescission was available only against the dealer Zucker, who was the seller of the boat; and that Voytovich should not be able to rescind or recover damages against a manufacturer with whom Voytovich had no contractual relationship. Second, Bangor Punta contended that the measure of damages awarded by the District Court was erroneous; and third, Bangor Punta contended that the District Court erred in granting relief in the alternative.

As to Bangor Punta's first assertion that Voytovich could not revoke his acceptance against the manufacturer, Voytovich argues that rescission is supported by the District Court's finding of privity between Voytovich and Bangor Punta or by the violation of an express warranty. The findings of privity were based on certain direct dealings between Voytovich and Bangor Punta. Voytovich had visited the factory during construction of the boat and had certain special features added to the boat (although these special features had nothing to do with the hull design).

It is clear that the applicable Ohio statute allows a buyer to revoke an acceptance. (The statute does not speak in terms of rescission.) Ohio Revised Code § 1302.66, in relevant part, provides:

(A) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it:

.    .    .    .    .    .

(2) without discovery of such nonconformity if his acceptance was reasonably induced either by

the difficulty of discovery before acceptance or by the seller's assurances.

■ Bangor Punta argues that this statute allows revocation only against the seller, and that Voytovich could revoke only against Zucker. Clearly, under this statute Voytovich cannot revoke against Bangor Punta; Bangor Punta was not the seller. The question is whether he derives a right of revocation from some other source of law.

■ Under Ohio law it is clear that a purchaser who relies on the express warranty of a manufacturer in purchasing goods, and suffers injury or loss of bargain, may directly sue the manufacturer. Rogers v. Toni Home Permanent Co., 167 Ohio St. 244, 147 N.E.2d 612 (1958), and Inglis v. American Motors Corp., 3 Ohio St.2d 132, 209 N.E.2d 583 (1965). After these cases there can be no dispute that Voytovich had a right to sue the manufacturer, and to recover damages for breach of express warranty.

■ However, we have been unable to find any case allowing a purchaser to rescind a sale against a manufacturer for a breach of express warranty. No such case has been cited to us by appellee. In our opinion, in order to be entitled to the remedy of rescission, there must be a buyer-seller relationship, and that relationship is absent in this case. Voytovich's only contractual relationship was with Zucker. Thus, we are constrained to vacate the rescission award.

Appellant's second contention is that the damage portion of the judgment was unsupported by any evidence. We disagree. Ohio Revised Code § 1302.88(B) provides:

The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

Appellant claims that the only evidence on damages was a statement by Voytovich that he would be lucky to realize $10,000 on the sale of the boat. However, it is clear that this testimony was not the basis of the damage award. In its conclusions of law the District Court found:

Under the facts found herein, the vessel in question still has the inherent probability of flexing and sustaining damage, and as such has the probability of again sustaining damage in the amount of $10,000, which is, therefore, a fair measure of its loss in value.

■ We think this finding is supported by the evidence and meets the test of the statute. The cost of repairs for the initial damage was $9,487, and the experts found it was susceptible to recurrence of the same type of damage. Thus a $10,000-estimate for future damages is clearly reasonable. At the time of delivery and at all times afterward the boat was susceptible to this type of damage. Its value was thus that much less than its warranted value. The evidence would have supported a much larger award.

The judgment of $10,000, with interest and costs, is affirmed. The alternative award of rescission is vacated.