176 N.J. Super. 57 (1980)
422 A.2d 101
BENJAMIN EDELSTEIN, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
TOYOTA MOTORS DISTRIBUTORS AND TOYOTA MOTOR SALES, U.S.A., INC., DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 7, 1980.
Decided October 23, 1980.
*58 Before Judges MATTHEWS, MORGAN and MORTON I. GREENBERG.
*59 Benjamin Edelstein argued the cause pro se (Edelstein & Edelstein, attorneys).
Dana C. Argeris argued the cause for appellants and cross-respondents (Carton, Nary, Witt & Arvanitis, attorneys).
Norbert T. Knapp, on the brief, for defendants-appellants (Carton, Nary, Witt & Arvanitis, attorneys).
The opinion of the court was delivered by MORTON I. GREENBERG, J.A.D.
Plaintiff brought this action against Gateway Toyota, Inc. (hereinafter "Gateway") and Toyota Motors Distributors (hereinafter "Distributors"). He stated that he purchased a defective Toyota automobile from Gateway. Gateway, in turn, had received the automobile from Distributors. The alleged defects were not specified in the complaint but ultimately, at the proof hearing later discussed were claimed to include difficulty in shifting gears, a thumping noise and false readings from the electro-sensor warning panel. Plaintiff's complaint requested relief on theories of strict liability and breach of warranty. He sought recovery of the purchase price of $5,000.[1] Gateway answered and filed a cross-claim for indemnification against Distributors. The summons and complaint were served on Distributors in West Caldwell, New Jersey, on March 8, 1977 and were sent to Toyota Motor Sales, U.S.A., Inc. (hereinafter called "Sales"), a related corporation which was the importer of the vehicle, in California. They were then forwarded to an attorney in New Jersey for answering. Distributors, however, did not serve its answer within 20 days of the service of the summons and complaint upon it. R. 4:6-1(a). Thus, plaintiff filed a default against Distributors on April 12, 1977 and obtained a default judgment for $5,000 against it on April 18, 1977. Plaintiff and Gateway filed a stipulation of dismissal against Gateway. No consideration was paid to plaintiff for this stipulation. Plaintiff agreed to the dismissal because he conceived that the *60 judgment against Distributors gave him sufficient relief. Plaintiff has never sought to rejoin Gateway as a defendant.[2]
After entry of the default judgment Distributors moved to have it vacated and simultaneously asked the court to dismiss the complaint against it. These motions were made returnable on May 13, 1977 and were heard on that date. The judgment was vacated but the motion to dismiss the complaint was denied. Distributors then filed its answer. On September 21, 1977 plaintiff obtained an order permitting him to join Sales as a defendant. The amended complaint against Sales asserted that since it was the importer of plaintiff's Toyota it was liable for damages equal to the purchase price on the theories previously asserted against Distributors.
During the discovery period plaintiff served interrogatories. The answers were signed by Yale L. Gieszl, a vice-president of Distributors and Sales in California. Since plaintiff thought that Gieszl's testimony would be significant he demanded by a letter of February 3, 1978 that Distributors and Sales produce him at the trial. R. 1:9-1. Defendants served a pretrial motion seeking an order setting aside the notice to produce. Defendants' attorney certified that Gieszl had no independent knowledge concerning the matter but had merely answered the interrogatories from corporate records. Plaintiff filed a certification dated March 8, 1978 in opposition to this motion. He stated: "The testimony of Yale W. Gieszl is essential to the proof of my case with respect to the defects in the automobile as manufactured and put in commerce by the Defendants." Defendants' motion was denied without prejudice and an appropriate order to that effect was entered April 3, 1978. This motion was renewed at the outset of the trial on May 24, 1979, but defendants were directed by the judge on that day to produce Gieszl on May 29, 1979. The judge warned defendants that if Gieszl was *61 not produced plaintiff could move to strike defendants' answer and obtain a default. Notwithstanding this admonition, defendants did not produce him. Instead, on May 29, 1979 counsel for defendants, after discussing settlement negotiations, told the judge:
And my client does not wish to produce Mr. Gieszl. They feel that if this case has any merit at all it should be resolved for at most the $750. They do not feel it is apparently in their interest to produce Mr. Gieszl at the trial and with all due respect, Your Honor, they are not going to comply with Your Honor's order.
Plaintiff then moved to strike their answers and have a default entered. This motion was granted. The case then proceeded to trial on damages. Defendants' counsel was permitted to participate at this trial, thus indicating that the default entered applied solely to the issue of liability.
At the outset of the hearing on damages there was a colloquy between plaintiff and the judge with respect to plaintiff's proposed relief. Plaintiff waived an asserted claim for mental anguish. The judge warned plaintiff that if he proceeded only on a theory of rescission that his proofs could be inadequate because the possibility existed that rescission was not an appropriate remedy. The judge asked plaintiff if he should not prove damages, but plaintiff replied:
Well, if Your Honor please, I have not repaired the vehicle and I was proceeding on the basis of rescission. I am entitled to rescission or not entitled to rescission. I had made no repairs. I offered-and this is part of my proof. I offered the Defendant the opportunity to make the repairs and I have their warranty which provides that repairs be made by their authorized agents.
It was thus clear that plaintiff sought only a rescission of the contract. Under the Uniform Commercial Code plaintiff's cause of action is characterized as revocation of acceptance. N.J.S.A. 12A:2-608. It should be noted, however, that this different characterization does not, under the facts of this case, affect the remedy sought. Plaintiff did not ask for, or prove, damages for repairs or for the diminution in value of the car. In accordance with plaintiff's request the judge, after hearing the evidence, ordered what he called rescission. Thus, defendants were held liable for $5,000, the purchase price of the car. An appropriate *62 order for judgment was signed June 5, 1979. It recited, among other matters, "That at the time of manufacture the automobile purchased by the plaintiff, was defective giving the plaintiff the right to rescission." Plaintiff's recovery did not include the $250 he paid as sales tax. Presumably, defendants were to be given the car back upon satisfying the judgment. In fact, plaintiff made that offer in court at the outset of the hearing.
Defendants appeal. They assert that the trial judge erred in requiring the appearance of Gieszl and in entering a default against them when he did not appear. They further argue that plaintiff was not entitled to rescission against them since they were not the sellers of the car. Plaintiff cross-appeals, urging that the judge should not have vacated his original default judgment against Distributors. We affirm the order vacating the first judgment. We reverse the order granting judgment against defendants entered after the hearing since we hold that plaintiff did not establish a right to relief. We therefore do not reach the issues of whether the court properly declined to strike plaintiff's notice to produce or whether the court should have entered a default against defendants when Gieszl was not produced.
We deal first with the cross-appeal. The summons and complaint were served on Distributors in New Jersey on March 8, 1977. They were mailed to California and received there on March 22, 1977. They were sent to Distributors' attorney in New Jersey on April 13, 1977. The default judgment was entered April 18, 1977. An answer was forwarded to plaintiff by Distributors' attorney on April 21, 1977. The answer was returned on April 26, 1977 because it was out of time. Distributors immediately moved to vacate the default judgment. An affidavit was filed on its behalf asserting that there were meritorious defenses arising out of the fact that it had not manufactured the automobile, had given no warranties and had not been a party to the sale. The affidavit also recited how the summons and complaint had been processed by Distributors. *63 We find that Distributors moved with reasonable diligence. Its answer was delayed about four weeks. However the delay was understandable since the summons and complaint made two transcontinental trips. Further, Distributors asserted a defense which, as we will see, was not only substantial as alleged but ultimately complete. Clearly, the default judgment was properly vacated and therefore we affirm the order rendered by the trial court vacating the judgment. See Marder v. Realty Construction Co., 84 N.J. Super. 313 (App.Div. 1964), aff'd 43 N.J. 508 (1964).
Having resolved the issue raised by plaintiff's cross-appeal we turn to defendants' appeal. Assuming that defendants were properly defaulted for failing to produce Gieszl, nevertheless their default did not necessarily establish liability for the particular remedy which plaintiff sought. See Prickett v. Allard, 126 N.J. Super. 438 (App.Div. 1974), aff'd o.b. 66 N.J. 6 (1974). The trial judge had the power notwithstanding the default to require plaintiff to show that he was entitled to the relief demanded. Douglas v. Harris, 35 N.J. 270 (1961). Here plaintiff attempted to establish his right to relief by his own testimony.
The relief which plaintiff sought was expressly and carefully limited by him to rescission or, as referred to under the Uniform Commercial Code, revocation of acceptance. N.J.S.A. 12A:2-608. Treating defendants as manufacturers, liability against them for economic loss from a defective product could be derived from strict liability, the Uniform Commercial Code or by contractual agreement. Herbstman v. Eastman Kodak Co., 68 N.J. 1, 7 (1975).[3] However, an action brought under the *64 Code, seeking only the revocation of acceptance (N.J.S.A. 12A:2-608), is limited to cases in which the purchaser makes his complaint directly against the seller. See Herbstman v. Eastman Kodak Co., supra, 68 N.J. at 9-10. But if the seller is the agent of the manufacturer in the sale of the product, then the action for revocation of acceptance may be asserted directly against the manufacturer. Conte v. Dwan Lincoln-Mercury, Inc., 172 Conn. 112, 374 A.2d 144 (Sup.Ct.Err. 1976). In this case there was no proof that Gateway, the seller, was the agent in the sale of the vehicle of either Distributors or Sales. Thus, plaintiff cannot recover against Distributors or Sales for the limited relief he sought under the Code. Insofar as plaintiff alleges a right to rescission outside of the Code, the absence of a contractual relationship between plaintiff and either defendant plus the absence of evidence showing that Gateway acted as an agent in the sale of the vehicle for Distributors or Sales, defeats his claim. Voytovich v. Bangor Punta Operations, Inc., 494 F.2d 1208 (6 Cir.1974); Conte v. Dwan Lincoln-Mercury, Inc., supra; Volvo of Amer. Corp. v. Wells, 551 S.W.2d 826 (Ky. Ct. App. 1977); Carlson v. Shepard Pontiac, Inc., 63 Misc.2d 994, 314 N.Y.S.2d 77 (Sup.Ct. 1970); see Pavesi v. Ford Motor Co., 155 N.J. Super. 373, 379 (Ch.Div. 1978). Thus, plaintiff is not entitled to rescission against defendants on a strict liability theory. Nor is plaintiff entitled to rescission on a warranty theory against defendants because he points to no contractual agreement with them creating a right to such relief. In the absence of such an agreement, or the showing of privity in the sale between plaintiff and defendants or that the seller was defendants' agent in the sale, the common law does not entitle him to such relief.
Plaintiff in his brief asserts that there should be liability "of others in the distribution chain than the retailer." We do not suggest that the law is otherwise. We only hold here that an action for rescission or revocation of acceptance cannot be asserted against defendants in their capacity as manufacturers. Plaintiff, by not seeking to reinstate his claim against Gateway, and by limiting his attempted recovery against Distributors and *65 Sales to rescission or revocation of acceptance, made his cause of action fatally defective. As so viewed we conclude that the trial judge should have dismissed this case.
In light of this disposition of the case, we need not reach the issues of whether Gieszl should have been required to appear or whether a default judgment should have been entered against defendants. Although we do not reach these issues, we should not be understood to approve defendants' disregard of the order of the trial court. If defendants disagreed with the order, they should have sought relief by application for leave to appeal with a request for a stay. R. 2:2-4; In re Carton, 48 N.J. 9, 16-19 (1966). Alternatively, they could have appealed after the trial. R. 2:2-3(a). Their willful violation of the order of the court was inexcusable. However, we note that even the presence of Gieszl would not have established that Gateway was defendants' agent in the sale of the vehicle. Plaintiff's affidavit showed that his testimony was sought with respect to defects in the vehicle.
The judgment of June 5, 1979 is reversed and the complaint is ordered dismissed. Defendants shall not be allowed costs either here or in the Law Division.
NOTES
[1] The complaint demanded $5,025 but the purchase price had been $5,000. Thus, there was a $25 error. Ultimately $5,000 was sought.
[2] Further references to "defendants" do not include Gateway since it was no longer a party after the dismissal.
[3] The complaint alleges that Distributors and Sales are the distributing and sales companies for Toyota, respectively, in "New Jersey and elsewhere" and in the United States. It is alleged that Toyota Motor Co., Lt'd is the manufacturer. We can conceive of no higher or additional duty that Distributors or Sales could owe plaintiff beyond that of a manufacturer, and thus plaintiff cannot be prejudiced by the court treating them as manufacturers.