# Larry Gochey v. Bombardier, Inc.

[572 A.2d 921]

No. 88-289

Present: Allen, C.J., Gibson and Dooley, JJ., and Barney, C.J. (Ret.) and Springer, D.J. (Ret.), Specially Assigned

Opinion Filed February 9, 1990

*Gensburg Axelrod & Adler*, St. Johnsbury, for Plaintiff-Appellee.

*Charles N. Hurt, Jr.,* of *Downs Rachlin & Martin,* St. Johnsbury, for Defendant-Appellant.

**Gibson, J.** Defendant Bombardier, Inc., a manufacturer of snowmobiles, appeals from a superior court order denying its motion to alter a judgment allowing plaintiff to revoke acceptance and recover the purchase price of a defective snowmobile. We affirm.

## I.

In December of 1984, plaintiff Larry Gochey purchased from Race and Custom Sports Center, an authorized Bombardier dealer, a 1985 Formula Plus snowmobile manufactured by Bombardier. Plaintiff, who received an express limited warranty from Bombardier at the time of the purchase, bought the snowmobile as a recreational vehicle for his son. Under the terms of the express warranty, Bombardier covenanted to repair or replace defective components, materials or workmanship without charge. Within a week of the purchase, problems developed with the drive belt and clutch, causing loss of traction, loss of power, and excessive belt deterioration. Plaintiff took the snowmobile to the dealer for repair several times during the winter of 1984–85, but the dealer was not able to remedy the problems. Bombardier, whose service representative had been notified of the problems shortly after the purchase, directed the futile attempts at repair.

Finally, in January of 1986, Bombardier proposed the installation of a sturdier type of a belt, called a Kevlan belt. Upon notification that the repair had been completed, plaintiff refused to retake possession because Bombardier declined to extend its warranty, and plaintiff believed that the underlying problem, the clutch, had not been remedied. In February of 1986, plaintiff revoked acceptance of the snowmobile and demanded a refund of the purchase price, as well as incidental expenses. Bombardier refused and plaintiff brought suit under § 2310(d)* of the Magnuson-Moss Warranty Act (Act), 15

---

* 15 U.S.C. § 2310(d) provides, in part, that "a consumer who is damaged by

U.S.C. §§ 2301–2312 (1982), and 9A V.S.A. § 2-608 of Vermont's version of the Uniform Commercial Code.

At trial, the Washington Superior Court found that Bombardier had breached its express warranty as well as implied warranties of merchantability and fitness for a particular purpose, entitling plaintiff to revoke his acceptance and recover the purchase price of the snowmobile, together with incidental and consequential damages, interest, and attorney's fees. Pursuant to V.R.C.P. 59, Bombardier filed a motion to amend the judgment on the ground that revocation of acceptance is not available against a manufacturer not in contractual privity with the buyer. The court denied the motion, holding that revocation was proper against Bombardier because, in effect, the dealer was Bombardier's agent. Bombardier then brought the instant appeal.

## II.

We must first determine whether revocation of acceptance is an available remedy under the Magnuson-Moss Warranty Act when there is a breach of a *limited* warranty. Upon breach of a full warranty, § 2304(a)(4) of the Act expressly provides that a warrantor "must" allow a consumer to elect a refund or a replacement for a product that contains a defect or malfunctions after a reasonable number of repair attempts. Refund of the purchase price for breach of a limited warranty, on the other hand, though not mandated, is consistent with the Act. *Ventura v. Ford Motor Corp.*, 180 N.J. Super. 45, 63, 433 A.2d 801, 810 (1981). Section 2311(b)(1) provides that nothing in the Act restricts "any right or remedy of any consumer under State law or any other Federal law." Accordingly, state law determines plaintiff's remedies upon breach of a limited warranty; if state law permits revocation, that remedy is not precluded by the Magnuson-Moss Warranty Act. *Ventura*, 180 N.J. Super. at 65, 433 A.2d at 811.

---

the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief."

## III.

■ Bombardier's principal argument is that, under Vermont law, revocation is not available against a remote manufacturer unless the dealer who sold the product was the manufacturer's agent in the sale, and that the court erred in concluding that Race and Custom Sports was Bombardier's agent in the instant sale. We hold that revocation is available as a remedy against a manufacturer whose product comes with an express warranty that is passed on to the consumer by the seller at the time of the sale, and which product later proves to have substantial defects that continue to exist after a reasonable number of repair attempts.

Under 9A V.S.A. § 2-608(1), the buyer may revoke acceptance of substantially nonconforming goods if, among other things, "the seller's" assurances induced the buyer's acceptance. Further, revocation is not effective until the buyer notifies "the seller" of it. *Id.* § 2-608(2). "Seller" is defined as "a person who sells or contracts to sell goods." *Id.* § 2-103(1)(d).

Most courts have held that a buyer may revoke acceptance of goods only against the immediate seller. See, e.g., *Voytovich v. Bangor Punta Operations, Inc.*, 494 F.2d 1208, 1211 (6th Cir. 1974); *Edelstein v. Toyota Motors Distributors*, 176 N.J. Super. 57, 64, 422 A.2d 101, 104–05 (1980); *Wright v. O'Neal Motors, Inc.*, 57 N.C. App. 49, 56, 291 S.E.2d 165, 169 (1982); *Noice v. Paul's Marine & Camping Center, Inc.*, 5 Ohio App. 3d 232, 235, 451 N.E.2d 528, 532 (1982). According to these courts, revocation is not available against the manufacturer of a vehicle absent a contractual relationship between the manufacturer and the buyer or an agency relationship between the manufacturer and the seller. See also *Seekings v. Jimmy GMC of Tucson, Inc.*, 130 Ariz. 596, 600, 638 P.2d 210, 214 (1981) (en banc) (no privity between manufacturer and buyer and no evidence to support finding that dealer was agent of manufacturer); *Conte v. Dwan Lincoln-Mercury, Inc.*, 172 Conn. 112, 125, 374 A.2d 144, 149–50 (1976) (dealer not agent of manufacturer regarding sale of automobile). The rationale behind these holdings is that revocation is intended to return the buyer and seller to their presale positions. Because the manufacturer does not own the

goods at the time of the sale and does not receive the purchase price when the goods are sold, it has no role to play in restoring the parties to their former positions. *Gasque v. Mooers Motor Car Co.*, 227 Va. 154, 162, 313 S.E.2d 384, 390 (1984).

Some courts, however, have held that a buyer may revoke acceptance of goods against a manufacturer that has expressly warranted the goods to the ultimate buyer. See *Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349, 357 (Minn. 1977) (en banc); *Volkswagen of America, Inc. v. Novak*, 418 So. 2d 801, 804 (Miss. 1982); *Ventura*, 180 N.J. Super. at 64–65, 433 A.2d at 811–12. In *Durfee*, the purchaser of a new car revoked acceptance against the national distributor after 6,000 miles and a succession of minor repairs. Although the court mentioned the possibility that the consumer might be left without a remedy if he were forced to seek relief from the dealer, it was most persuaded by the fact that the national distributor had offered an express warranty:

> When the exclusive remedy found in the warranty fails of its essential purpose and when the remaining defects are substantial enough to justify revocation of acceptance, we think the buyer is entitled to look to the warranty for relief. If plaintiff had sued [the distributor] for breach of either express warranty or implied warranty, the absence of privity would not bar the suit despite the [use of the term "the seller" in those] sections. We see no reason why the result should differ merely because plaintiff has chosen to revoke his acceptance instead of suing for breach of warranty.

*Durfee*, 262 N.W.2d at 357 (citations omitted).

In *Novak*, the purchasers of a new car revoked acceptance, after several replacement engines had been installed in the car, against, among others, the manufacturer that had extended a new car limited warranty. In affirming the revocation remedy, the court stated:

> [T]he retailer[']s sales contract [and] the manufacturer's warranty, are so closely linked both in time of delivery and subject matter, that they blended into a single unit at the time of sale. . . . [S]ales are usually made, not only upon the make and model of the automobile, but also upon the assur-

ance of the manufacturer, through its warranty, that the vehicle will conform to the standards of merchantability. *Novak*, 418 So. 2d at 804.

Finally, in *Ventura*, the court held that recovery of the purchase price of a new car against a manufacturer who has extended a limited warranty is an appropriate remedy in an action pursuant to the Magnuson-Moss Warranty Act:

> We are dealing with the breach of an express contractual obligation. Nothing prevents us from granting an adequate remedy under state law for that breach of contract, including rescission when appropriate. Under state law the right to revoke acceptance for defects substantially impairing the value of the product and to receive a refund of the purchase price are rights available to a buyer against a seller in privity. Where the manufacturer gives a warranty to induce the sale it is consistent to allow the same type of remedy as against that manufacturer. Only the privity concept, which is frequently viewed as a relic these days, has interfered with a rescission-type remedy against the manufacturer of goods not purchased directly from the manufacturer. If we focus on the fact that the warranty creates a direct contractual obligation to the buyer, the reason for allowing the same remedy that is available against a direct seller becomes clear. Although the manufacturer intended to limit the remedy to the repair and replacement of defective parts, the failure of that remedy, and the consequent breach of the implied warranty of merchantability which accompanied the limited warranty by virtue of the Magnuson-Moss Warranty Act, make a rescission-type remedy appropriate when revocation of acceptance is justified.

180 N.J. Super. at 65–66, 433 A.2d at 811–12 (citations omitted). The *Ventura* court distinguished *Edelstein*, an earlier New Jersey Superior Court decision that refused to allow revocation against a remote manufacturer, by pointing out that, in *Edelstein*, there was no proof of a warranty from the manufacturer and the purchaser had not relied on the Magnuson-Moss Warranty Act. *Id.* at 68, 433 A.2d at 813.

■ We agree with the rationale expressed in *Ventura* that when a manufacturer expressly warrants its goods, it, in effect, creates a direct contract with the ultimate buyer. Accordingly, in an action pursuant to the Magnuson-Moss Warranty Act, the consumer may collect reasonable attorneys' fees, 15 U.S.C. § 2310(d)(2), and secure any available state remedies, including a refund of the purchase price along with incidental and consequential damages and interest, directly from the manufacturer when the manufacturer's defect substantially impairs the product. The argument that allowing such a remedy prevents the actual parties to the sale from being restored to their former positions cannot override the fact that the manufacturer breached its warranty to the ultimate consumer. When the manufacturer's defect results in revocation by the consumer, the manufacturer must assume the liability it incurred when it warranted the product to the ultimate user. Cf. *Volvo of America Corp. v. Wells*, 551 S.W.2d 826, 829 (Ky. Ct. App. 1977) (where all problems with new car involved defective parts, dealer entitled to indemnity against manufacturer's distributors in purchaser's suit for revocation); *Jacobs v. Rosemount Dodge-Winnebago South*, 310 N.W.2d 71, 80 (Minn. 1981) (en banc) (seller of new motor home, as mere conduit in chain of distribution, entitled to indemnity from manufacturer of motor home body because faulty design prevented seller from being able to make repairs as required by warranty); *Massingale v. Northwest Cortez, Inc.*, 27 Wash. App. 749, 754, 620 P.2d 1009, 1012 (1980) (accord).

■ Defendant contends that a footnote in a recent Vermont case, *Costa v. Volkswagen of America*, 150 Vt. 213, 214–15 n.1, 551 A.2d 1196, 1197–98 n.1 (1988), implies that revocation does not lie against a remote manufacturer in the absence of an agency relationship. In *Costa,* we did not deal directly with the issue before us in the instant case; *Costa* is overruled to the extent it is at odds with our decision today.

■■ Lastly, we note that we may affirm a correct judgment even though the grounds stated in support of it are erroneous. See *Circus Studios, Ltd. v. Tufo*, 145 Vt. 219, 222, 485 A.2d 1261, 1263 (1984). Accordingly, despite the trial court's reliance

on an agency theory, we can affirm the court's denial of Bombardier's motion to alter the judgment based on our determination that plaintiff may revoke acceptance against Bombardier in this instance even in the absence of an agency relationship between Bombardier and the dealer.

*Affirmed.*